UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES JOSEPH THOMPSON,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:18-CV-04063-KES<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on James Joseph Thompson's *pro se* motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Respondent the United States of America ("government"), moves to dismiss Mr. Thompson's § 2255 petition without holding an evidentiary hearing. See Docket No. 10. Mr. Thompson resists the motion. See Docket No. 15. Mr. Thompson's case was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and pursuant to the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] In this opinion, the court cites to documents in the court's file for this civil habeas case by simply citing the docket number of the document. The court cites to documents in Mr. Thompson's underlying criminal case, United States v. Thompson, 4:15-cr-40107 (D.S.D.), by citing to the docket number in the criminal case preceded by "CR."

**FACTS**

**A.     Proceedings Before the District Court**

Mr. Thompson was indicted by a federal grand jury in the District of South Dakota on September 1, 2015, and charged with conspiracy to distribute methamphetamine in the District of South Dakota and elsewhere. See CR Docket No. 1. A superseding indictment was entered on April 5, 2016, charging Mr. Thompson with only possession with intent to distribute methamphetamine in the District of South Dakota on August 26 & 27, 2015. See CR Docket No. 83. A second superseding indictment was entered on May 10, 2016, charging Mr. Thompson with possession with intent to distribute methamphetamine on August 26, and 27, 2015, in the District of South Dakota and elsewhere. See CR Docket No. 101.

Mr. Thompson was represented by a succession of court-appointed lawyers, one of whom filed a motion to suppress on Mr. Thompson's behalf. See CR Docket No. 78. Counsel argued the evidence used in the affidavit in support of a search warrant of Mr. Thompson's home—evidence gained when police seized Mr. Thompson's trash--was obtained illegally and that the information in the affidavit (from an anonymous source) was insufficient to show probable cause. Id. An evidentiary hearing on this motion was held on May 5, 2016, and the motion was denied. See CR Docket Nos. 94, 105, & 111.

On August 5, 2016, Mr. Thompson requested to be allowed to represent himself at the jury trial in this matter after his then-counsel discovered a conflict of interest and Mr. Thompson was adamant about proceeding to trial

on the date then set for trial, August 9, 2016.  See CR Docket No. 147.  The court granted Mr. Thompson's request and appointed attorney James Eirinberg as stand-by counsel.  Id.  The trial took place from August 9-10, 2016.  See CR Docket No. following 148, and CR Docket No. 154.

At the trial, testimony established that Mr. Thompson sold methamphetamine in South Dakota and that he obtained his methamphetamine through the mail from Phoenix, Arizona.  See CR Docket No. 180, pp. 108-10 (Jury Trial Transcript).  The evidence showed Mr. Thompson would buy methamphetamine in Arizona, purchase a plastic safe, place the methamphetamine in the safe, and mail it to himself at a hotel in Minneapolis, Chicago, or Omaha where he had made reservations under his name.  Id.

When police seized Mr. Thompson's multiple cell phones and searched them, they discovered multiple photos of mailing labels on the phones; the labels were addressed to Mr. Thompson at various hotels such as the La Quinta in Bloomington, Minnesota, right outside of Minneapolis, with an origination location in Phoenix, Arizona.  See CR Docket No. 180-1 at pp. 203-05, 211-12.  In addition, there were numerous text messages with someone Mr. Thompson called "Big Perm" discussing when mail was anticipated to arrive.  See CR Docket No. 180-1 at p. 200-10.  Other text messages referred to anticipated deliveries in Chicago.  Id. at p. 208.

After methamphetamine arrived through the mail, Mr. Thompson then stored the methamphetamine and money in a storage unit in Rock County,

Minnesota. See CR Docket No. 180 at 108-10. A receipt for the rental of a storage unit in Luverne, Minnesota (in Rock County), in Mr. Thompson's sole name was discovered among Mr. Thompson's trash. Id. at 34-35. Mr. Thompson distributed this methamphetamine in South Dakota. Id. at 105-08. When police searched the storage unit in Minnesota, there were numerous boxes with mailing labels on them as well as methamphetamine and $36,950 in cash. Id. at 134-37. The mailing labels on the boxes were addressed to Mr. Thompson. Id. at pp. 138-39. Testimony established that the 19 grams and 116 grams of methamphetamine found at Mr. Thompson's home and storage unit (respectively), represented distribution quantities of the drug, not personal consumption amounts. See CR Docket No. 180-1 at pp. 215-16.

Mr. Thompson was convicted of the single count in the second superseding indictment charging him with possession with intent to distribute methamphetamine. See CR Docket No. 154. The district court sentenced Mr. Thompson to 150 months' imprisonment. See CR Docket No. 167.

**B.    The Direct Appeal**

Mr. Thompson appealed the conviction and sentence. See CR Docket No. 169. On appeal, Mr. Eirinberg was appointed to represent Mr. Thompson. However, Mr. Thompson also filed his own *pro se* brief raising issues in addition to those raised by his counsel.

Counsel raised two issues on appeal. First, that police had violated Mr. Thompson's Fourth Amendment rights when they seized his trash and

sifted through it for evidence. Second, that insufficient evidence had been adduced at trial to support Mr. Thompson's conviction.

Mr. Thompson filed his own supplemental brief raising an additional 10 issues, with many subissues.

1.  Only 19 grams of methamphetamine were found in Mr. Thompson's South Dakota home and 116 grams were found in his storage unit in Luverne, Minnesota. This gave rise to (a) a defective indictment because the indictment did not mention Minnesota as a location of the crime—it specified the crime took place in the District of South Dakota and "elsewhere"; (b) when the district court prevented the jury from considering the "and elsewhere" portion of the indictment the court impermissibly constructively amended the indictment; (c) the Luverne evidence constituted Rule 404(b) evidence and it should have been excluded from trial as unduly prejudicial; and (d) because of the "and elsewhere" issue, there is a substantial probability the jury was not unanimous in finding Mr. Thompson guilty.

2.  The government prejudicially violated the court's ruling *in limine* prohibiting the government from mentioning before the jury that cocaine and marijuana had been found when police executed search warrants at his South Dakota home and his Minnesota storage unit.

3.  Stand-by trial counsel rendered ineffective assistance at trial when, for purposes of interposing an objection to a question posed by the government to Mr. Thompson, counsel erroneously stated Mr. Thompson had pending state court charges.

5

4.      The court erred in allowing the government to show the jury a photo depicting cocaine and marijuana seized pursuant to the search warrants, even though the court had ruled *in limine* that no evidence of cocaine and marijuana could be introduced at trial.

5.      Agent Harvison testified untruthfully when he testified Jeremy Murray, who was at Mr. Thompson's house at the time the search warrant was executed, had no connection to the drugs found at Mr. Thompson's house.

6.      The government introduced photos and texts from cell phones depicting drug activities in violation of Federal Rule of Criminal Procedure 16(a) because the government did not provide Mr. Thompson with pretrial notice of its intent to use this evidence at trial.

7.      The testimony from government witness James Ivy violated Federal Rule of Evidence 404(b) when he testified [on cross-examination by Mr. Thompson] that he decided to tell police about Mr. Thompson's drug dealing activities when Ivy learned Mr. Thompson took his five-year-old son along to pick up drugs.

8.      The court erred when it granted defense trial counsel Jeff Larson's motion to withdraw because of a conflict of interest.  The information from which Mr. Larson determined he had a conflict came from witness James Ivy, who was not credible.  The court should have allowed Mr. Thompson to have an evidentiary hearing at which he could put Mr. Ivy on the witness stand and demonstrate his lack of credibility so as to extinguish counsel Larson's conflict of interest.

9.    Mr. Thompson was prejudiced when the government introduced only a photo of the $26,000 seized from his property instead of introducing into evidence the actual bills. Had the bills been introduced, Mr. Thompson would have been able to show they were old currency, whereas drug money would "more likely than not be newer currency."

10.    The venue of the grand jury which indicted Mr. Thompson should have been in Minnesota, not South Dakota, because that is where the bulk of the methamphetamine seized came from.

The Eighth Circuit affirmed the district court in all respects. United States v. Thompson, 881 F.3d 629, 630 (8th Cir. 2018). The court found Mr. Thompson had no objective expectation of privacy in the trash that police seized and used to supply probable cause for the issuance of a search warrant. Id. at 631-32. As to the sufficiency of the evidence at trial, the court recounted that 19 grams of pure methamphetamine hidden in a lockbox and $26,000 in currency were seized from Mr. Thompson's home, with another 115 grams of pure methamphetamine and another $36,950 in cash seized from his storage unit. Id. at 631, 633. In addition, there were digital scales, heat sealed bags, and multiple cell phones. Id. at 633.

The court stated intent to distribute can be proved by circumstantial evidence such as drug quantity, purity level, and the presence of cash, among other indicia. Id. at 632-33. In addition, James Ivy testified Mr. Thompson sold him methamphetamine on several occasions. Id. at 633. The court found the evidence sufficient to sustain the verdict, with or without Ivy's testimony.

Id.  As to the ten issues Mr. Thompson raised *pro se*, the court stated it had reviewed those issues and found no merit to them.  Id.  The court noted in a footnote that it was not ruling on the merits on Mr. Thompson's ineffective assistance of counsel claim.  Id. at n.4.

**C.     Mr. Thompson's Allegations in his § 2255 Motion**

Mr. Thompson asserts three claims in support of his request for § 2255 relief:

1.     Mr. Thompson alleges the venue for the 115 grams of methamphetamine was improper as that charge should have been prosecuted in Minnesota.

2.     The jury may not have been unanimous because of the venue issue—some jurors may have found him guilty on the South Dakota drugs only, while other jurors may have found him guilty on the Minnesota drugs only, with an absence of 12 jurors voting to convict as to either drug stash.

3.     The district court improperly considered the 115 grams of methamphetamine from Minnesota in arriving at Mr. Thompson's sentence.

The government now moves to dismiss Mr. Thompson's § 2255 motion, arguing that each of the above issues was either raised and decided on the merits in Mr. Thompson's direct appeal, or that it was not so raised and is now procedurally defaulted.  See Docket No. 10.  Mr. Thompson resists the government's motion.  See Docket No. 15.

8

## DISCUSSION

**A.    Scope and Procedure Applicable to a § 2255 Motion**

Section 2255 of Title 28 of the United States Code provides, in relevant part, as follows:

> (a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authority authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on a violation of a Constitutional right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed for

10

the first time in a § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a claim of constitutionally-deficient counsel.  Mr. Thompson has not raised any allegations of ineffective assistance of counsel in his § 2255 motion.

When a defendant *has* raised an issue on appeal, that issue cannot be relitigated in a § 2255 proceeding.  "With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal."  Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (*en banc*) (citing Davis, 417 U.S. at 346-47; United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001); United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (*per curiam*).  Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  Davis, 417 U.S. at 346-47; Sun Bear, 644 F.3d at 704.  Or where the petitioner presents convincing new evidence of actual innocence.  Wiley, 245 F.3d at 752 (citing Weeks v. Bowersox, 119 F.3d 1342, 1350-51 (8th Cir. 1997) (*en banc*)).

**B.      Issues One and Two Were Raised on Direct Appeal**

In issues one and two of his § 2255 motion, Mr. Thompson argues that venue for the methamphetamine found in the Luverne, Minnesota, storage unit was not proper in the District of South Dakota.  Also, Mr. Thompson argues,

11

because the indictment alleged one crime, but the evidence showed two distinct crimes (i.e. possession with intent to distribute in South Dakota and in Minnesota), the indictment was duplicitous.  Mr. Thompson cannot obtain § 2255 relief for these claims for two reasons:  (1) he raised these claims on direct appeal and cannot relitigate them here and (2) his argument is substantively wrong.

As noted above, in Mr. Thompson's *pro se* supplemental brief, he raised these issues before the Eighth Circuit on his direct appeal.  The Eighth Circuit considered these claims on their merits, but did not grant any relief on them.  Thompson, 881 F.3d at 633.  Therefore, he cannot relitigate them herein unless he can show "a fundamental defect which inherently results in a complete miscarriage of justice," or convincing new evidence of actual innocence.  Davis, 417 U.S. at 346-47; Sun Bear, 644 F.3d at 704. Wiley, 245 F.3d at 752; Weeks, 119 F.3d at 1350-51.  Mr. Thompson cannot show either a fundamental defect or actual innocence.

First, Mr. Thompson never asserts actual innocence herein.  In fact, with the overwhelming evidence against him at trial, he would be hard-pressed to credibly assert such a claim.  In jail, Mr. Thompson described his methodology in great detail to James Ivy—the process of mailing methamphetamine to himself from Arizona to various hotels in Minneapolis, Chicago, and Omaha.  The contents of Mr. Thompson's cell phones and his storage shed showed numerous mailing labels for packages addressed to Mr. Thompson at hotels in the described cities and originating from Phoenix, Arizona.

As to a fundamental defect causing a complete miscarriage of justice, Mr. Thompson cannot demonstrate that because he is wrong on the law. Mr. Thompson's legal argument is that it would be appropriate for the government to prosecute him in South Dakota had the government tried him on a conspiracy charge, because a conspiracy charge can be prosecuted in any district in which a part of the crime was committed. However, he asserts when the government decided to charge him with possession with intent to distribute instead of conspiracy, it could only prosecute him in the district where the possession was demonstrated to have occurred. Here, Mr. Thompson concedes that the prosecution in South Dakota for the 19 grams of methamphetamine found at his house was appropriate, but asserts that the government was required to prosecute him in Minnesota for the 115 grams of methamphetamine found in his Luverne, Minnesota, storage shed.

The case of United States v. Granados, 117 F.3d 1089 (8th Cir. 1997) (which the district court cited to Mr. Thompson in his underlying criminal case), is directly on point. Although Granados was charged with drug conspiracy, he was also charged with possession with intent to distribute in "North Dakota and elsewhere," and various counts were based on drugs that Granados possessed and distributed in Minnesota. Id. at 1090. Focusing on the possession with intent to distribute charges, the court noted that possession with intent to distribute is a continuing crime and, when it is begun in one district and completed in another district, it can be tried in any district in which the offense began, continued, or was completed. Id. at 1091.

There was evidence that Granados possessed the drugs in North Dakota, so prosecution in North Dakota for possession with intent to distribute was proper, even if the distribution occurred in Minnesota. Id. at 1092. The charge of distribution of drugs, however, which was not a continuing crime, was only proper in Minnesota. Id. The court's holding was based on an analysis of the possession with intent to distribute charges, not the conspiracy charge. Id. When the government charges possession with intent to distribute, the possession element need not occur in the same district as the distribution element. Id. at 1091. See also United States v. Booker, 2013 WL 12226860 at *2-3 (D.N.D. Nov. 27, 2013).

Here, the facts presented the obverse of Granados, but the holding applies with equal force and effect. The possession of the 115 grams of methamphetamine occurred in the non-prosecuting district (Minnesota), while the distribution occurred in the prosecuting district (South Dakota). As Granados makes clear, because the crime of possession with intent to distribute is a continuing offense, prosecution in either district was permissible. The evidence showed Mr. Thompson received the methamphetamine through the mail, stored it in Minnesota, and distributed it in South Dakota. That satisfies the venue requirement of Granados.

Mr. Thompson makes reference in count two of his § 2255 motion to a potential lack of jury unanimity. This is the danger posed by a duplicitous indictment—one that charges a single crime, but in reality encompasses two separate crimes. United States v. Pietrantonio, 637 F.3d 865, 869 (8th Cir.

14

2011).  When a defendant is tried on a duplicitous indictment, the Sixth Amendment right to a unanimous jury verdict is jeopardized because the jury may split on which conduct it believes the government proved.  Id.  This is intertwined with the venue issue where the two acts comprising the single count in the indictment took place in different venues.  Id.

Here, there is no duplicity issue because the crime of possession with intent to distribute is a continuing offense.  Granados, 117 F.3d at 1091.  Thus, the jury was not required to chose between believing Mr. Thompson possessed methamphetamine in Minnesota, South Dakota, or both.  Both locations of possession were part of the continuing crime of possession with intent to distribute.  Pietrantonio, 637 F.3d at 869 (citing United States v. George, 625 F.3d 1124, 1131 (9th Cir. 2010)).[2]  Unlike a crime that is a one-time event, where a crime is a continuing offense, having actions constituting the crime occur over a period of time and in different places does not pose the same duplicity problem.  George, 625 F.3d at 1131.  In addition, the court instructed the jury that the verdict must be unanimous.  See CR Docket No. 157 at p. 10.

Finally, the court notes that the law recognizes several kinds of possession, including constructive possession.  United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004).  The court instructed the jury that Mr. Thompson could constructively possess the drugs in the Minnesota storage

---

[2] George was subsequently vacated on other grounds.  See United States v. George, 672 F.3d 1126 (9th Cir. 2012).

unit if he had the power and intention at a given time to exercise dominion and control over them, even if he shared this constructive possession with another person.  See CR Docket No. 157 at p. 3.  The evidence at trial was that Mr. Thompson was the sole lessee on the storage unit lease agreement.  Furthermore, the storage unit was locked with a padlock affixed to the door by Mr. Thompson.  Finally, the storage unit was filled with items belonging to Mr. Thompson such as a trailer licensed to Mr. Thompson and the aforementioned boxes with mailing labels addressed to Mr. Thompson.  This was sufficient to show Mr. Thompson constructively possessed the methamphetamine in the storage unit.  The possession, constructive or actual, of a large quantity of drugs is sufficient to show intent to distribute.  Serrano-Lopez, 366 F.3d at 634.

    Mr. Thompson cites the case of United States v. Delgado, 914 F.2d 1062, 1065-66 (8th Cir. 1990), in support of his duplicity argument.  However, Delgado is distinguishable.  Delgado was prosecuted in North Dakota, but the evidence showed he was never in North Dakota, the drugs never reached North Dakota, and no action constituting possession occurred in North Dakota.  Delgado, 914 F.2d at 1065-66.  The defendant was charged with possession with intent to distribute as well as conspiracy to distribute.  Id.  The court reversed on venue grounds as to the possession with intent to distribute charge, but affirmed as to the conspiracy charge.  Id.

In Mr. Thompson's case, he clearly *was* in South Dakota, the drugs reached South Dakota, and the distribution occurred in South Dakota. The Delgado case does not support Mr. Thompson's argument.

This court respectfully recommends that Mr. Thompson's first and second claims for § 2255 relief be dismissed without an evidentiary hearing because he has already litigated those claims and he cannot show either a fundamental defect or actual innocence.

### C.   Mr. Thompson's Third Claim for § 2255 Relief

Mr. Thompson claims his sentence should be modified, vacated, or set aside because the district court improperly considered the 115 grams of methamphetamine found in Minnesota when the court calculated his sentence. To the extent Mr. Thompson is merely raising another variation on his venue argument, he cannot obtain relief for the same reasons already discussed.

In addition, however, Mr. Thompson has procedurally defaulted this claim. He could have raised this issue on appeal, but neither he nor his counsel raised the issue. Therefore, the issue is procedurally defaulted. Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749. In order for this court to reach the merits of the issue, Mr. Thompson must show cause and prejudice excusing his default, or he must show new evidence indicating he is actually innocent. Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749. He does not adduce proof of either of these. Accordingly, the court recommends Mr. Thompson's third claim for relief be denied without holding an evidentiary hearing as well.

### D. No Evidentiary Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, no evidentiary issue is warranted. Mr. Thompson's claims all fail on the merits given the settled law and the settled record before the court. There are no issues of fact or credibility to be determined. Accordingly, the court recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 10] be granted and that Mr. Thompson's § 2255 motion be dismissed with prejudice.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED September 5, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge